## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.S., a minor, by Natalie M.R. | : | |
| Burston, Esq., Guardian *Ad Litem*, | : | |
|    Plaintiff | : | |
| | : | No. 1:17-cv-1789 |
|    v. | : | |
| | : | (Judge Kane) |
| YORK COUNTY, et al., | : | |
|    Defendants | : | |

## MEMORANDUM

Before the Court is Plaintiff's Motion for Leave to File an Amended Complaint.  (Doc.

No. 28.)  For the reasons that follow, the Court will grant Plaintiff's motion.

## I.      BACKGROUND[1]

Plaintiff B.S. ("Plaintiff"), is a minor residing in York County, Pennsylvania.  (Doc. No.

1 ¶ 1.)  Defendants are York County, which operates a department known as the York County

Office of Children, Youth and Families ("York County OCYF"), Nan Mavor ("Mavor"), Cathy

Lyman ("Lyman"), and Jacy Nemec ("Nemec"), who were caseworkers or supervisors employed

by York County OCYF.[2]  (Id. ¶¶ 4-8.)

In 2012, York County OCYF removed Plaintiff from his mother's home.  (Id. ¶ 11.)

York County OCYF assigned caseworkers Mavor and/or Nemec to Plaintiff's case.  (Id. ¶ 12.)

Lyman was the supervisor in charge of Plaintiff's case.  (Id. ¶ 13.)  Upon Plaintiff's removal

from his mother's home, York County OCYF was required to find an appropriate placement for

Plaintiff.  (Id. ¶ 14.)   York County OCYF placed Plaintiff in foster care with Ronald Witmer.

---

[1] The following background is taken from the allegations of Plaintiff's complaint.  (Doc. No. 1.)

[2] Plaintiff's claims against Mavor, Lyman and Nemec are asserted against them in their individual and official capacities.  (Id. ¶¶ 6-8.)

(Id. ¶ 15.)  In March of 2013, Plaintiff was adjudicated dependent on York County OCYF.  (Id. ¶ 16.)  York County OCYF recommended that physical and legal custody of Plaintiff be given to Ronald Witmer and his wife, Mary Ann Stough.  (Id. ¶ 17.)  Ronald Witmer and Mary Ann Stough received legal custody of Plaintiff in 2013.  (Id. ¶ 18.)  In January of 2014, York County OCYF closed Plaintiff's case but required that it be notified of any change in Plaintiff's custody. (Id. ¶¶ 19-20.)

While Plaintiff was in the custody of Witmer, Witmer sexually abused him, and in the spring of 2017, was arrested for that abuse.  (Id. ¶¶ 22-23.)  Ultimately, Witmer pled guilty to Involuntary Deviate Sexual Intercourse, 18 Pa..C.S. § 3123(a)(7), and Corruption of Minors, 18 Pa.C.S. § 6301(a)(1)(ii), related to his sexual abuse of Plaintiff.  (Id. ¶ 25.)  Prior to Plaintiff's placement in Witmer's home, Witmer had sexually abused young boys on at least two occasions, resulting in two criminal convictions in 1989 and 1991.  (Id. ¶¶ 29-44.)

On October 3, 2017, Plaintiff filed his complaint in this Court alleging that York County OCYF should never have placed him in Witmer's home given his history of sexual abuse of young boys.  (Id. ¶¶ 45-47.)  Plaintiff's complaint alleges that at the time of these events, York County OCYF was inadequately staffed and its caseworkers insufficiently trained, resulting in the oversights that led to Plaintiff's placement in Witmer's home.  (Id. ¶¶ 48-53.)  Based on these factual allegations, Plaintiff's complaint asserts two claims against York County OCYF, Mavor, Lyman and Nemec: count one alleges a state-created danger claim pursuant to 42 U.S.C. § 1983, and count two alleges a special relationship claim under 42 U.S.C. § 1983.  (Id. ¶¶ 56-74.) Defendants filed an answer to the complaint on February 5, 2018.  (Doc. No. 10.)

Soon after the filing of Plaintiff's complaint, Plaintiff filed a motion to appoint a guardian

*ad litem* for Plaintiff.  (Doc. No. 7.)  On February 15, 2018, the Court granted in part Plaintiff's

motion for the appointment of a guardian *ad litem* and appointed Natalie M.R. Burston, Esq. as

guardian *ad litem* for Plaintiff.  (Doc. No. 11.)

Shortly thereafter, the Court held a case management conference in this matter and

referred the case to mediation pursuant to the Court's mandatory mediation program.  (Doc. Nos.

14-16.)  When the case failed to resolve through mediation, the Court issued a case management

order that bifurcated the issues of liability and damages, setting October 9, 2018 as the date for

the close of fact discovery on liability issues, and November 9, 2018 as the date for dispositive

motions related to the issue of liability.  (Doc. No. 19.)  Plaintiff subsequently filed an

unopposed motion for a two-month extension of time to complete discovery on liability issues,

which the Court granted, setting December 9, 2018 as the date for the close of discovery and

January 8, 2019 as the date for the filing of liability-related dispositive motions.  (Doc. No. 27.)

On November 8, 2018, Plaintiff filed the instant Motion for Leave to File an Amended

Complaint (Doc. No. 28), with a proposed first amended complaint attached as an exhibit (Doc.

No. 28-3), and a supporting brief (Doc. No. 29).  After receiving an extension of time to respond

to the motion, Defendants filed their Brief in Opposition to Plaintiff's Motion to Amend on

November 29, 2018 (Doc. No. 33), with exhibits (Doc. No. 33-1).  Plaintiff filed a Reply Brief in

further support of his motion on December 13, 2018.  (Doc. No. 34.)  Defendants then requested

permission to file a sur-reply brief, which the Court granted.  (Doc. No. 38.)  On January 4,

2018, Defendants filed their sur-reply brief  (Doc. No. 39), with supporting exhibits (Doc. No.

39-1).  Accordingly, the motion is ripe for disposition.[3]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) governs Plaintiff's request for amendment and provides, in pertinent part, that after amending a complaint once as a matter of right, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  See Fed. R. Civ. P. 15(a)(2).  As the Supreme Court has stated, "the grant or denial of an opportunity to amend is within the discretion of the District Court . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion, it is merely an abuse of discretion and inconsistent with the spirit of the Federal Rules."  See Foman v. Davis, 371 U.S. 178, 182 (1962).

Grounds potentially justifying denial of leave to amend are "undue delay, bad faith, dilatory motive, prejudice, and futility."  See id.; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); In re Burlington, 114 F.3d at 1434.  In assessing "futility," a district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).  See In re Burlington, 114 F.3d at 1434; 3 Moore's Federal Practice, § 15.15[3] at 15-55 to 15-61 (3d ed. 2013).  Accordingly, in assessing the potential futility of a

---

[3] In light of the pending Motion for Leave to File an Amended Complaint, Defendants filed a motion requesting an extension of the dispositive motions deadline until thirty days after the Court's resolution of the pending Motion.  (Doc. No. 35.)  By Order dated December 31, 2018, the Court granted the motion.  (Doc. No. 37.)

proposed amended complaint, the Court must accept as true the allegations in the proposed

amended complaint and construe those allegations in the light most favorable to the party

seeking leave to amend.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir.

2010).

The issue of "prejudice" focuses on hardship to the defendant if the amendment were

permitted, specifically, whether amendment "would result in additional discovery, cost, and

preparation to defend against new facts or new theories."  See Cureton v. Nat'l Collegiate

Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  With regard to "undue delay," the Third

Circuit has held that the mere passage of time does not require that a motion to amend a pleading

be denied; "however, at some point, the [movant's] delay will become 'undue,' placing an

unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the

opposing party."  See Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  In assessing the

issue of "undue" delay, the Court's focus is on the movant's motives for not amending sooner.

See id.

## III.    DISCUSSION

Plaintiff's motion and supporting brief seek leave to file a first amended complaint that

accomplishes the following:  (1) it corrects some factual inaccuracies in his original complaint

that were revealed in the course of discovery; (2) it adds an additional defendant, Ashley

Rohrbaugh ("Rohrbaugh"), pursuant to Federal Rule of Civil Procedure 20;[4] and (3) it adds a

---

[4] Federal Rule of Civil Procedure 20 governs Permissive Joinder of Parties, and provides,
in pertinent part:

(a)      Person Who May Join or Be Joined
         . . .

Monell claim for municipal liability against Defendant York County OCYF.  Defendants oppose

the addition of Ashley Rohrbaugh as a defendant and the addition of a Monell claim against

Defendant York County OCYF, arguing that the Court should deny Plaintiff's request on the

grounds of futility and unfair prejudice to Defendants.  The Court addresses each asserted

ground for denial of Plaintiff's motion in turn.

### A.    Futility

#### 1.    Claim Against Rohrbaugh

Plaintiff seeks to add Rohrbaugh as an additional defendant in this action on the basis

that she was Nemec's supervisor in connection with Plaintiff's case and was "directly involved

in decisions regarding B.S.'s placement," facts of which Plaintiff maintains he was unaware until

Rohrbaugh's deposition was taken in October of 2018.   (Doc. No. 29 at 5-6.)  Plaintiff alleges

that Rohrbaugh was the York County OCYF employee who asked for and received the results of

Witmer's background check in connection with Plaintiff's initial placement in his home.  (Id. at

6.)

In opposing Plaintiff's motion as to the addition of Rohrbaugh as a defendant,

Defendants argue that any proposed claim against Rohrbaugh would be futile because

Rohrbaugh is entitled to absolute immunity for her actions with regard to the events underlying

---

(2)    Defendants.  Persons – as well as a vessel, cargo, or other property subject to admiralty process in rem – may be joined in one action as defendants if:

    (A)    any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

    (B)    any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).

Plaintiff's claims.  (Doc. No. 33 at 13-16.)  In this regard, Defendants rely on <u>Ernst v. Child and</u> <u>Youth Services of Chester County</u>, 108 F.3d 486 (3d Cir. 1997), where the Third Circuit joined several other circuits in deeming "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state . . . absolute[ly] immun[e] from suit for all of their actions in preparing for and prosecuting such dependency proceedings."  <u>See id.</u> at 488-89.

In response, Plaintiff maintains that Rohrbaugh is not entitled to absolute immunity with regard to his claims.  Plaintiff acknowledges that while under prevailing authority Rohrbaugh may be entitled to absolute immunity for her actions in "preparing for, initiating, and prosecuting [B.S.'s] dependency proceedings," she may still be liable for her actions that were "investigative" and/or "administrative."  (Doc. No. 34 at 8.)  Plaintiff maintains that Rohrbaugh, as the York County OCYF intake supervisor on Plaintiff's case, was involved in his case prior to the initiation of judicial proceedings, and therefore, her actions regarding his case "necessarily involved 'investigative' and 'administrative' work for which she is not afforded absolute immunity."  (Doc. No. 34 at 9.)

Specifically, Plaintiff argues that his proposed first amended complaint alleges that several months before the initiation of dependency proceedings, Rohrbaugh "requested and received the results of Witmer's criminal history[ ] the very day OCYF determined that he should return to Witmer's care."  (<u>Id.</u> at 10.)  Plaintiff maintains that Rohrbaugh did not provide the results of Witmer's criminal history (revealing a sex crime conviction related to children) to the caseworker who initially visited Witmer's home and performed his "Present Danger Assessment" on November 17, 2012.  (<u>Id.</u> at 11.)  Plaintiff asserts that Rohrbaugh's failure to do so resulted in the caseworker's failure to identify Witmer as a Present Danger to Plaintiff or to

recognize that Witmer lied to her when reporting that he had no convictions, both of which would have had a significant impact on any decisions regarding the placement of B.S. (Id. at 11-12.) Accordingly, Plaintiff argues that absolute immunity does not bar his claims against Rohrbaugh, and, therefore, adding her as a defendant in this case would not be futile.

In their sur-reply brief, Defendants point out that Plaintiff's proposed first amended complaint identifies three bases for Rohrbaugh's potential liability: (1) her failure to communicate the results of Witmer's criminal history to the caseworker who visited his home; (2) her approval of a flawed "Present Danger Assessment" that failed to account for Witmer's criminal convictions; and (3) her "affirmative[] recommend[ation] to the York County Court of Common Pleas" that Witmer should be given custody of Plaintiff. (Doc. No. 39 at 1-2.) Because Rohrbaugh's recommendation to the court cannot form the basis of her liability, Defendants argue that "in order for the proposed amended complaint to establish any liability on the part of Rohrbaugh, it must be shown that either her receipt of information that B.S. would be unsafe with Witmer or signing off on an incorrect Risk Assessment Model were actions that were not related to a judicial proceeding and actions that resulted in a violation of B.S.'s constitutional rights." (Id. at 2.) Defendants maintain that even if the two actions complained of "were not taken in preparation for the dependency proceedings" (and are therefore not necessarily protected by absolute immunity), they cannot provide a basis for Rohrbaugh's liability because "[t]here is no causal relationship between this alleged conduct and B.S.'s alleged constitutional violation." (Id. at 3.)

In making the argument that there is no causal relationship between Rohrbaugh's alleged conduct and the constitutional violations alleged by Plaintiff and that, therefore, any claim

against Rohrbaugh is futile, Defendants point to and rely on numerous facts of record.  (Id. at 2-6.)  However, in assessing futility in connection with a request for leave to amend a complaint, the Court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).  See In re Burlington, 114 F.3d at 1434.  This means that the Court accepts as true the allegations in the proposed amended complaint and construes those allegations in the light most favorable to the party seeking leave to amend.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d at 314.  It would be inappropriate at this stage of the proceedings for the Court to consider the facts referenced by Defendants in an effort to determine if there is a causal relationship between Rohrbaugh's alleged conduct and the constitutional violations alleged by Plaintiff in connection with assessing "futility."  Under the relevant legal standard, the Court cannot conclude at this time that permitting amendment of Plaintiff's complaint to include a claim against Rohrbaugh would be futile.

## 2.     Proposed Monell Claim Against York County OCYF

As to the proposed amendment of his claims against defendant York County OCYF to include a Monell claim for municipal liability, Plaintiff notes that he bases his Monell claim on two alleged practices that he maintains caused his sexual abuse; specifically, (1) York OCYF's "routine practice of circumventing Pennsylvania's Child Protective Services Law related to the vetting of foster parents;" and (2) York OCYF's "routine practice of completing 'Present Danger Assessments' without the benefit of criminal records for out-of-home caregivers."  (Doc. No. 29 at 4-5.)

Defendants argue that the Court should not permit Plaintiff to amend his complaint to add a Monell claim on the basis that Plaintiff's proposed Monell claim against York County OCYF

would be futile because it is barred by collateral estoppel and the Rooker-Feldman doctrine, as such a claim amounts to a relitigation of issues previously litigated and determined in a prior state court action.  (Doc. No. 33 at 16-21.)

Plaintiff maintains that his proposed amended theory of Monell liability against York OCYF is not futile in that it is not precluded by collateral estoppel or the Rooker-Feldman doctrine.  (Doc. No. 34 at 13-22.)  Specifically, Plaintiff maintains that the collateral estoppel requirement that the "identical issue" was previously litigated[5] is not met here with regard to the Monell claim sought to be asserted by Plaintiff because the York County court never made a determination as to whether York OCYF or its caseworkers violated Plaintiff's constitutional rights.  (Id.)  In this regard, Plaintiff relies on Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 (3d Cir.1997), where the Third Circuit rejected an argument that claims against Chester County Children and Youth Services workers regarding constitutional violations resulting from state court custody determinations were barred by collateral estoppel.  (Doc. No. 34 at 15.)  Plaintiff maintains that here the York County court "never made any decision as to whether OCYF violated B.S.'s due process right to be free from sexual abuse, or whether OCYF had unconstitutional practices that caused such abuse."  (Id. at 16.)

Second, Plaintiff maintains that the Rooker-Feldman doctrine[6] does not bar this Court

---

[5] Under prevailing Third Circuit precedent, the applicability of collateral estoppel requires a determination that four elements are met: "(1) the identical issue was previously adjudicated, (2) the issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (internal citation omitted).

[6] The Rooker-Feldman doctrine is a doctrine of limited application.  It precludes a federal district court from "exercising jurisdiction over cases brought by 'state-court losers' challenging

from exercising jurisdiction over his <u>Monell</u> claim unless that claim is "'inextricably

intertwined' with an issue previously adjudicated by the York County court." (<u>Id.</u> at 17.)

Plaintiff  acknowledges that the issue of whether a state court judgment and subsequent federal

claims are "inextricably intertwined" is "less obvious than the phrase might imply." (<u>Id.</u>)  He

maintains that under Third Circuit precedent federal claims "are 'inextricably intertwined' with

York County's judgment only (1) 'when in order to grant the federal plaintiff the relief sought,

the federal court must determine that the state court judgment was erroneously entered' and (2)

when 'the federal court must . . . take action that would render [the state court's] judgment

---

'state-court judgments rendered before the district court proceedings commenced and inviting
district court review and rejection of these judgments.'"  <u>See</u> <u>Lance v. Dennis</u>, 546 U.S. 459, 460
(2006) (per curiam) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284
(2005)).  The Third Circuit has outlined four prerequisites to the application of <u>Rooker-Feldman</u>:
"(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by
[the] state court judgments; (3) those judgments were rendered before the federal suit was filed;
and (4) the plaintiff . . . invit[es] the district court to review and reject the state judgments."  <u>See</u>
<u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010)
(citation omitted).  The second and fourth requirements "are the key to determining whether a
federal suit presents an independent, non-barred claim."  <u>Id.</u> at 166, 169.
       The second requirement of the <u>Rooker-Feldman</u> doctrine – that the plaintiff complain of
injuries caused by a state-court judgment – "may . . . be thought of as an inquiry into the source
of the plaintiff's injury."  <u>See id.</u>  In conducting the inquiry, the Court must identify those claims
"that profess to complain of injury by a third party, but actually complain of injury 'produced by
a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'"  <u>Id.</u> at
167 (citation omitted).  "When the source of the injury is the defendant's actions (and not the
state court judgments), the federal suit is independent," and thus, not foreclosed by <u>Rooker-
Feldman</u>, "even if it asks the federal court to deny a legal conclusion reached by the state court."
<u>See id.</u>  The third requirement – that the federal plaintiff invite the district court to review and
reject the state court judgment – is "closely related" to the second requirement.  <u>See id.</u> at 168.  It
"targets . . . whether the plaintiff's claims will require appellate review of state-court decisions
by the district court," which the Third Circuit has explained "consists of a review of the
proceedings already conducted by the 'lower' tribunal to determine whether it reached its result
in accordance with the law."  <u>See id.</u> at 169 (citation omitted).  Nevertheless, "as long as the
'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion
reached by the state court,"  <u>Rooker-Feldman</u> will not defeat the existence of subject matter
jurisdiction. See <u>id.</u>

ineffectual.'" (Id.) (citing <u>FOCUS v. Allegheny County Court of Common Pleas</u>, 75 F.3d 834,

840 (3d Cir. 1996)). Plaintiff maintains that he does not "contend York County's judgments

were 'erroneously entered,' nor does he ask this Court to render York County's judgments

'ineffectual.'" (Id.)

In support of his position, Plaintiff references several Third Circuit cases where the court

concluded that the <u>Rooker-Feldman</u> doctrine does not bar constitutional claims related to state

court dependency and custody proceedings. (Id. at 18-20.) Second, Plaintiff notes that he is not

asking this Court to overturn the York County court's dependency or custody judgments because

the issue of Plaintiff's custody is moot in that Witmer is in prison and no longer has custody of

Plaintiff. (Id.) Third, Plaintiff points out that he alleges "misconduct preceding and allegedly

resulting in the state court judgment" and substantive due process violations "in investigating the

allegations of abuse" against Witmer prior to Plaintiff's dependency proceedings. (Id. at 21.)

Plaintiff argues that constitutional claims regarding misconduct that results in a state court

judgment are not protected by <u>Rooker-Feldman</u>, because although success on his claims in this

action "might tend to undermine the state court's conclusions," it "would not require that they be

overruled." (Id.) (quoting <u>Wilson v. The New Jersey Div. Of Child Prot. & Permanency</u>, No. 13-

cv-3346, 2016 WL 316800, at *4 (D.N.J. Jan. 26, 2016)). Specifically, Plaintiff maintains that

he "seeks to hold OCYF responsible for practices that produced a shoddy investigation and

initial placement decision. It is true that the York County court ultimately agreed Witmer did

'not pose a risk of harm,' but that decision was based on OCYF's investigation prior to the York

County proceedings." (Id. at 21-22.)

In their sur-reply brief, Defendants maintain that a finding that Witmer posed an

unreasonable threat of harm to Plaintiff is a prerequisite of Plaintiff's <u>Monell</u> municipal liability

claim, and Defendants reiterate their position that the York County court's findings to the

contrary mean that collateral estoppel and the <u>Rooker-Feldman</u> doctrine preclude any finding by

this Court that he did.  (Doc. No. 39 at 8-10.)  In making their arguments, Defendants again

reference and rely on several exhibits submitted in connection with their briefs opposing

Plaintiff's motion.  (<u>Id.</u> at 9-10.)   As noted above, in assessing futility in connection with a

request for leave to amend a complaint, the Court applies the same standard of legal sufficiency

as applies under Federal Rule of Civil Procedure 12(b)(6).  <u>See</u> <u>In re Burlington</u>, 114 F.3d at

1434.  This means that the Court accepts as true the allegations in the proposed amended

complaint and construes those allegations in the light most favorable to the party seeking leave

to amend.  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d at 314.  It would be inappropriate

at this stage of the proceedings, therefore, for the Court to consider facts of record referenced by

Defendants in connection with an assessment of the potential "futility" of Plaintiff's <u>Monell</u>

municipal liability claim.  Under the relevant legal standard, the Court cannot conclude at this

time that permitting Plaintiff's requested amendment to include a <u>Monell</u> municipal liability

claim against York County OCYF would be futile because any such claim is necessarily barred

by collateral estoppel or the <u>Rooker-Feldman</u> doctrine.[7]  Because futility is not a basis for denial

of Plaintiff's request for leave to amend, the Court turns to an analysis of the issue of prejudice.

### B.      Prejudice

As noted above, with regard to the issues of undue delay and prejudice, the Third Circuit

has held that the mere passage of time does not require that a motion to amend a pleading be

---

[7] The Court makes this finding for the purposes of this motion only.

denied; "however, at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." See Adams, 739 F.2d at 868. As explained previously, prejudice concerns on hardship to the defendants if the amendment were permitted, specifically, whether the amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories." See Cureton, 252 F.3d at 273.

Defendants argue that Plaintiff engaged in undue delay in filing his motion seeking leave to amend, resulting in prejudice to them if Plaintiff's motion is granted. (Doc. No. 33 at 21.) Defendants argue that Plaintiff has been aware of Rohrbaugh's role as Nemec's supervisor since at least April of 2018 and dismiss the importance of information obtained by Plaintiff in connection with Rohrbaugh's deposition in October of 2018. (Id. at 22-23.) Further, Defendants maintain that Rohrbaugh would be prejudiced by the assertion of claims against her at a time when discovery on liability issues has closed. (Id. at 23-24.) As to Plaintiff's proposed Monell claim, Defendants argue that Plaintiff "does not explain his delay in changing his theory of municipal liability less than a month away from the discovery deadline," and maintain that the prejudice resulting from the proposed amendment is "striking," because Plaintiff's original claims against York County and the proposed new claims "involve entirely different questions of fact and will require months of additional discovery to investigate, likely including additional depositions, subpoenas, and potentially expert testimony." (Doc. No. 33 at 23, 24.) Defendants maintain that, at a minimum, if the Court is inclined to permit Plaintiff's proposed amendment, the Court should also grant a 120 day extension of the liability discovery deadline to permit Defendants to obtain discovery regarding these new claims. (Id. at 25.)

In response, Plaintiff maintains that he has not unduly delayed in seeking to amend his complaint, and that the filing of his proposed amended complaint will not prejudice Defendants. (Doc. No. 34 at 22.)  As to the timing of his motion for leave to amend, Plaintiff argues that it was only through the discovery process in this case that he uncovered the facts supporting the amendments he seeks, maintaining that although he knew of Rohrbaugh's existence early in the discovery period, he was unaware of the "extent of her involvement with B.S.'s case" until her October 24, 2018 deposition.  (Id. at 24.)  Plaintiff notes that prior to Rohrbaugh's deposition, he mistakenly believed  that she had no direct involvement in the investigation of his case; however, upon learning of the nature of her involvement at her deposition on October 24 and 25, 2018, his counsel contacted Defendants' counsel on October 31, 2018 and indicated Plaintiff's desire to amend the complaint to include a claim against Rohrbaugh.  (Id. at 24-25.)  Plaintiff maintains that he filed his motion for leave to amend on November 8, 2018, one day after York County OCYF advised Plaintiff that it would not agree to an amendment of the complaint.  (Id. at 25.)  Plaintiff further maintains that, as to his proposed Monell claim, he learned facts sufficient to support the claim only at the time of the depositions of Tanya Almoney and Tess Shortt, which occurred on October 24, 2018 and October 25, 2018, respectively.  (Id. at 25.)

Plaintiff also argues that the amendment of the complaint will not prejudice Defendants, despite the fact that liability discovery has closed since the filing of Plaintiff's motion.  (Id. at 26.)  Specifically, as to Rohrbaugh, Plaintiff points out that he needs no additional discovery with regard to his proposed claim against her, and that Defendants do not indicate what additional discovery might be necessary regarding the proposed claim.  (Id.)  Further, as to his Monell claim, Plaintiff argues that he seeks to assert the claim based on testimony from the York

County OCYF employees, who were represented by York County counsel in connection with their depositions, and that York County OCYF cannot plausibly claim prejudice as a result of facts admitted by its employees that it may have known all along.  (Id.)  In addition, Plaintiff again states that he requests no additional discovery regarding the potential claim, and that Defendants have not indicated what additional discovery might be necessary.  (Id.)

Upon consideration of the briefs of the parties and mindful of the relevant legal standard governing requests for leave to amend, the Court cannot conclude that Defendants have demonstrated "undue delay" or "prejudice" justifying denial of Plaintiff's motion for leave to amend his complaint.  Plaintiff has plausibly explained the reasons for the timing of his motion, and although the period for liability discovery has closed since the filing of Plaintiff's motion, no dispositive motions have been filed. The Court observes (and Defendants alternatively request) that it can readily address any potential prejudice to Defendant York County OCYF or potential defendant Rohrbaugh due to the subsequent close of discovery by permitting a brief extension of the liability discovery period.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant Plaintiff's Motion for Leave to File an Amended Complaint.  (Doc. No. 28.)  An appropriate Order follows.