# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.S., a Minor, by NATALIE M.R. BURSTON, Guardian *Ad Litem*, | : | NO. 1:17-CV-0178-YK |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| YORK COUNTY, NAN MAVOR, in her Individual and Official Capacity, CATHY LYMAN, in her Individual and Official Capacity, JACY NIEMIEC (AKA JACY COLIN), in her Individual and Official Capacity, and ASHLEY ROHRBAUGH, in her Individual and Official Capacity, | : : : : : : : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

## **FIRST AMENDED COMPLAINT**

AND NOW, comes the Plaintiff, B.S., a minor, by Natalie M.R Burston, Guardian *Ad Litem*, through undersigned counsel, who hereby files the within Amended Complaint against the Defendants: York County; Nan Mavor, in her Individual and Official Capacity; Cathy Lyman, in her Individual and Official Capacity; Jacy Niemiec (aka Jacy Colin), in her Individual and Official Capacity; and Ashley Rohrbaugh, in her Individual and Official Capacity, and states as follows:

## **PARTIES**

1. The Plaintiff, B.S., a Minor, by Natalie M.R Burston, Guardian *Ad Litem*, is a 14-year-old boy who resides in York County, Pennsylvania.

2. Natalie M.R Burston, serves as the Guardian *Ad Litem* for purposes of this action, having been so appointed by the Court's Order of February 15, 2018.

3. Defendant York County is a county located in south central Pennsylvania, which operates a department known as the York County Office of Children, Youth, and Families ("York OCYF"), located at 100 West Market St., Suite 402, York, PA 17401.

4. York OCYF's mission is to protect children, including from sexual victimization.

5. Defendant Nan Mavor ("Mavor"), in her Individual and Official Capacity, was, at all times relevant, a caseworker employed by York OCYF.

6. Defendant Cathy Lyman ("Lyman"), in her Individual and Official Capacity, was, at all times relevant, employed as a supervisor by York OCYF.

7. Defendant Jacy Niemiec (aka Jacy Colin) ("Colin"), in her Individual and Official Capacity, was, at all times relevant, a caseworker employed by York OCYF.

8. Defendant Ashley Rohrbaugh ("Rohrbaugh"), in her Individual and Official Capacity, was, at all times relevant, employed as a supervisor by York OCYF.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives U.S. district courts jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), since all defendants reside in this District and the events giving rise to the claims occurred in this District.

## FACTS

### Summary

11. In November 2012, York OCYF received a referral related to allegations of physical abuse of B.S., then 8-years-old, by his mother's boyfriend.

12. As a result, B.S. was removed from the apartment he shared with his mother (R.S.).

13. York OCYF then decided B.S. should reside with Ronald L. Witmer, B.S.'s paternal step-grandfather, and <u>a convicted sex offender who had molested young boys.</u>

14. Ultimately, due to York OCYF and its caseworkers' actions described herein, Witmer was empowered to sexually abused B.S. as well.

**Witmer Sexually Abused Children in 1989 and 1990**

15. Prior to B.S.'s placement with Witmer he sexually abused young boys on at least two occasions.

16. In March 1989, Witmer fondled a 4-year-old boy's genitals at the child's home in York County.

17. When interviewed by the police, Witmer admitted he sexually fondled the 4-year-old boy.

18. Witmer was interviewed by police on March 18, 1989; Witmer admitted he placed his hand in the 4-year-old boy's pants and fondled the little boy's genitals for "about one minute."

19. This abuse was reported to York OCYF.

20. In October 1989, Witmer pled guilty to charges related to his sexual abuse of the little boy. *See* York County Court of Common Pleas, No. CP-67-CR-0001045-1989.

21. Specifically, Witmer pled guilty to Indecent Assault and Corruption of Minors in 1989. *See* York County Court of Common Pleas, No. CP-67-CR-0001045-1989.

22. As a result, Witmer was given probation and ordered to pay for his child victim's counseling (which Witmer never did).

23. Witmer's 1989 conviction, however, did not stop Witmer from sexually abusing children.

24. In 1990, Witmer brought two young boys to his bedroom, and locked the door.

25. Witmer then exposed his penis to the two young boys.

26. Witmer demanded the two little boys expose themselves to him.

27. Witmer told the boys he would not let them leave the bedroom unless they complied.

28. Witmer threatened to assault the two little boys if they resisted.

29. Afraid of Witmer, the two little boys complied, and showed Witmer their penises.

30. Again, Witmer pled guilty to charges related to his sexual exploitation of these young boys and received jail time. *See* York County Court of Common Pleas, No. CP-67-CR-0000300-1991.

31. Specifically, Witmer pled guilty to Indecent Exposure and Corruption of Minors in 1991. *See* York County Court of Common Pleas, No. CP-67-CR-0000300-1991.

**York OCYF Decides B.S. Should Stay with Witmer in November 2012**

32. On November 16, 2012, York OCYF received a referral related to B.S.'s alleged physical abuse by his mother's boyfriend, as stated above.

33. York OCYF caseworker Tess Shortt ("Shortt") met B.S. and his siblings at school that day.

34. Since B.S. could not return to his mother's apartment given the allegations of abuse, Witmer came and picked up B.S. at school and took B.S. to Witmer's home then located on Bahn's Mill Rd. in Red Lion.

35. Shortt then went out to Witmer's home that same day to investigate Witmer as an "out-of-home" caregiver for B.S.

36. Shortt asked the adult members of the household, including Witmer, whether they had any criminal convictions; Witmer responded he did not.

37. This was a lie.

38. As described above, Witmer had two prior criminal convictions in York County (the 1989 conviction for Indecent Assault and Corruption of Minors and the 1991 conviction for Indecent Exposure and Corruption of Minors).

39. In the brief period Shortt was involved in B.S.'s case, she never learned of Witmer's criminal history, although, as described below, York OCYF knew of Witmer's 1991 conviction by the time of Shortt's first visit with Witmer.

40. Unaware of Witmer's criminal history, Shortt devised a York OCYF "Safety Plan," which was that B.S. remain with Witmer until the situation with his mother could be resolved.

**York OCYF Immediately Discovered Witmer was Convicted of a Sex Crime in 1991**

41. On November 16, 2012, at 12:07 PM, (the same day Shortt first visited Witmer's home), intake supervisor Ashley Rohrbaugh sent an "urgent" request to York County Emergency Services for Witmer's criminal history.

42. At the time, York OCYF sent all its criminal records requests through the Emergency Services department.

43. Within 45 minutes, Rohrbaugh received the results of Emergency Services' record search.

44. The records OCYF received revealed Witmer's 1991 Indecent Exposure and Corruption of Minors convictions (and not the 1989 conviction for reasons unknown), and that Witmer had served 8-23 months in County prison.

45. Shortt could have, but did not, look up Witmer's criminal records before Shortt devised B.S.'s "Safety Plan."

**York OCYF's Erroneous "Present Danger Assessment" of Witmer**

46. The next day, November 17, 2012, Shortt returned to Witmer's home.

47. Shortt prepared a "Present Danger Assessment" regarding B.S.'s "out-of-home" placement with Witmer dated November 17, 2012.

48. A "Present Danger Assessment" is a tool used by county children and youth agencies, including York OCYF, to assess danger to children in "out-of-home" placements (i.e. B.S.'s placement with Witmer).

49. Present Danger Assessments specifically ask whether "out-of-home" caregivers (i.e. Witmer) have any sex crime convictions.

50. When Shortt completed Witmer's Present Danger Assessment, she had no knowledge of Witmer's 1991 sex crime conviction, even though Rohrbaugh had already obtained the results of Witmer's criminal background check the day prior.

51. In 2012, it could take a few days for York OCYF to receive the results of the criminal background check from York County Emergency Services.

52. Due to this, York OCYF caseworkers, Shortt included, would perform Present Danger Assessments without the benefit of criminal records.

53. Such a practice is contrary to the training given to York OCYF caseworkers, which dictated the following regarding Present Danger Assessments:

> Note: It is expected that a record check will have occurred to ascertain current and historical information about the criminal and CCYA background of the out-of-home care providers. Such information could reveal questions of suitability that preclude continuing the out-of-home care living arrangement or could require immediate observation and inquiry into the suitability of the home.

54. Witmer's Present Danger Assessment explicitly asked whether Witmer had a sex crime conviction.

55. Shortt, however, did not indicate on Witmer's Present Danger Assessment that Witmer had a sex crime conviction.

56. This was a clear omission given Witmer's known criminal history.

57. York OCYF caseworker training regarding Present Danger Assessments states unequivocally that "the presence of any of these examples,[1] if confirmed, means the child is unsafe."

58. Thus, York OCYF and its caseworkers, including Rohrbaugh, had information, which, per their training, immediately indicated B.S. was unsafe with Witmer.

59. Indeed, according to Rohrbaugh (the intake supervisor assigned to B.S.'s case) a child should be removed from a home that constitutes a danger to a child per the Present Danger Assessment.

60. Despite this, B.S. remained with Witmer after the discovery of Witmer's sex crime conviction.

61. York OCYF never corrected the erroneous Present Danger Assessment to account for Witmer's known sex crime conviction.

---

[1] This refers to the examples provided in caseworkers' training on Present Danger Assessments. "Sex crimes," of which Witmer had been convicted, is one precisely of those examples.

62. The Present Danger Assessment, which should have indicated a danger to B.S., should then have been disclosed to the York County Court of Common Pleas during B.S.'s dependency case.

63. That of course never happened given York OCYF and its caseworkers botched the Present Danger Assessment.

**York OCYF Did Nothing to Investigate Witmer's Known Criminal History**

64. After Shortt, York OCYF caseworker Jacy Niemiec (aka Jacy Colin), took over B.S.'s case as the intake caseworker.

65. Colin's supervisor was Rohrbaugh.

66. Colin immediately became aware of Witmer's 1991 sex crime conviction, which Rohrbaugh was also aware of, as stated above.

67. Colin, as the intake caseworker, was tasked with investigating Witmer as an out-of-home caregiver for B.S.

68. Colin did nothing to investigate Mr. Witmer's known criminal history.

69. Indeed no one from York OCYF ever attempted to gather any documentation regarding Witmer's crimes beyond the initial records check on November 16, 2012.

70. No one from York OCYF ever tried to learn the true basis of Witmer's convictions for the 1989 or 1991 sex crimes.

71. This was a clear error, given that the circumstances of caregivers' criminal histories were important for assessing their fitness to care for children.

### York OCYF Erroneously Assessed Witmer as "Low Risk" for Abuse

72. During York OCYF's intake process, Colin and Rohrbaugh completed a "Risk Assessment Model" regarding Witmer.

73. A "Risk Assessment Model" is used to assess the risk to children, like B.S., in "out-of-home" placements.

74. Due to Witmer's known criminal conviction, York OCYF should have automatically considered Witmer as "high risk" for potential abuse on the Risk Assessment Model per York OCYF training.

75. Despite this, Colin completed a Risk Assessment Model indicating Witmer was "low risk" for abuse, which Rohrbaugh signed off on.

76. Colin and Rohrbaugh's Risk Assessment Model for Witmer is clearly wrong.

### York OCYF Quickly Determines Witmer is Ineligible to Serve as a Kinship Foster Parent due to Witmer's Sex Crime Convictions

77. York OCYF and its caseworkers' initial plan was to make Witmer a "kinship foster parent" for B.S.

78. However, York OCYF and its caseworkers quickly realized Witmer was ineligible to serve as a kinship foster parent under Pennsylvania law.

79. Pennsylvania law explicitly precludes individuals with Witmer's known sex crime conviction from serving as kinship foster parents for obvious reasons.

80. At the time, though, York OCYF had a practice of pursuing alternative routes to circumvent Pennsylvania's Child Protective Services Law to give custody to people ineligible for kinship foster care due to their criminal histories.

81. York OCYF employed this practice with Witmer.

82. Instead of kinship foster care, York OCYF and its caseworkers affirmatively recommended to the York County Court of Common Pleas that physical and legal custody of B.S. go to Witmer.

### York OCYF Obtains Legal Custody of B.S. and Recommends Physical and Legal Custody go to Witmer

83. As described above, Colin and Rohrbaugh decided B.S. should remain with Witmer despite his known criminal history, and the danger he posed to B.S. per York OCYF's own assessments (which were botched).

84. Colin and Rohrbaugh affirmatively recommended to the York County Court of Common Pleas that B.S. be placed with, and remain with, Witmer.

85. In early 2013, York OCYF formally obtained legal custody of B.S., with physical custody ordered to remain with Witmer.

86.  After the intake process, B.S.'s case was ultimately transferred to York OCYF caseworker Nan Mavor, whose supervisor was Cathy Lyman.

87.  Both Cathy Lyman and Nan Mavor knew of Witmer's criminal history.

88.  In fact, Mavor became aware of an allegation that Witmer fondled a young boy, information <u>beyond</u> that obtained by Rohrbaugh and Colin in November 2012.

89.  Due to Witmer's convictions, Mavor and/or Lyman discussed with Witmer the need for Witmer to obtain a sex-offender evaluation.

90.  That sex-offender evaluation never occurred.

91.  During the period York OCYF had legal custody of B.S., Mavor also heard Witmer tell his false version of the circumstances that led to his 1989 and 1991 convictions.

92.  Had anyone from York OCYF obtained records regarding Witmer's convictions, it would have been obvious Witmer was lying.

93.  Indeed, Witmer's false version of the facts surrounding his criminal history conflicted with information Mavor already knew regarding Witmer having fondled a young boy.

94.  Despite Mavor and Lyman's awareness that Witmer was convicted of sex crimes, and Mavor's knowledge of Witmer's lies about his crimes, both

recommended to the York County Court of Common Pleas that Witmer be given physical and legal custody of B.S.

**Legal and Physical Custody Passes from York OCYF to Ronald Witmer**

95. Due to York OCYF and its caseworkers' affirmative recommendations, in January 2014 York OCYF closed B.S.'s case, with physical and legal custody ordered by the York County Court of Common Pleas to go to Witmer.

96. From that point until Witmer's arrest in 2017, Witmer maintained at least partial custody of B.S., which gave Witmer the access to B.S. that Witmer needed to sexually abuse him.

97. In the interim, however, York OCYF received a referral related to Witmer's alleged sexual abuse of B.S. in 2016.

98. Although B.S. did not disclose any abuse by Witmer in 2016, York OCYF's report regarding Witmer in 2016 concluded B.S. was "placed at imminent risk of abuse based on [Witmer's] past criminal history."

99. York OCYF's 2016 report regarding Witmer was dead-on (if only York OCYF and its caseworkers reached the same conclusion in 2012).

**Witmer Sexually Abused B.S., is Convicted, and Goes to Prison**

100. In the spring of 2017, Witmer sexually abused B.S., a fact Witmer fully admits.

101. Witmer was arrested for sexually abusing B.S.

102. Witmer was charged with Involuntary Deviate Sexual Intercourse, 18 Pa.C.S. § 3123(a)(7), Sexual Assault, 18 Pa.C.S. § 3124.1, Indecent Assault, 18 Pa.C.S. § 3126(a)(1) and (a)(8), and several other offenses related to his sexual abuse of B.S.

103. On August 14, 2017, Witmer pled guilty to Involuntary Deviate Sexual Intercourse, 18 Pa.C.S. § 3123(a)(7), and Corruption of Minors, 18 Pa.C.S. § 6301(a)(1)(ii), related to his sexual abuse of B.S. *See* York County Court of Common Pleas No. CP-67-CR-0003392-2017.

104. Absent York OCYF, Colin, Rohrbaugh, Mavor, and Lyman's insistence that Witmer be B.S.'s caregiver, B.S. would not have been sexually abused.

105. York OCYF, Mavor, Lyman, Colin, and Rohrbaugh all knew or should have known that Witmer constituted a present danger and a high risk per York OCYF's own assessments; still, the Defendants decided Witmer should be the caregiver for B.S. and that Witmer should have legal and physical custody of the child.

106. Because of the Defendants' actions and omissions described herein, B.S. suffered severe, permanent, and debilitating injuries.

## COUNT I

**Plaintiff v. Defendants York County, Nan Mavor, in her Individual and Official Capacity, Cathy Lyman, in her Individual and Official Capacity, Defendant Jacy Niemiec (aka Jacy Colin), in her Individual and Official Capacity, and Defendant Ashley Rohrbaugh, in her Individual and Official Capacity**

### State Created Danger - 42 U.S.C. § 1983

107. The allegations throughout this Complaint are incorporated as if set forth at length.

108. Under the Fourteenth Amendment, B.S. had a right to bodily integrity, which was violated by Witmer's sexual abuse.

109. The Defendants affirmatively used their authority to create a danger to B.S. and/or rendered B.S. more vulnerable to danger than had the Defendants not acted.

110. The harm that resulted to B.S. was foreseeable and fairly direct.

111. The Defendants had actual knowledge of, or an awareness of, a risk to B.S. that was sufficiently concrete to put the Defendants on notice of the harm.

112. The Defendants acted with degree of culpability that shocks the conscience.

113. The Defendants had time to deliberate and make unhurried judgments regarding B.S.'s placements.

114. The Defendants were deliberately indifferent to the risk B.S. faced.

115. The Defendants disregarded a substantial risk of serious harm to B.S., which was obvious.

116. The relationship between the Defendants and B.S. was such that B.S. was a foreseeable victim and/or was a member of a discrete class of persons subjected to the potential harm brought about by the Defendants' actions.

117. As a direct and proximate result of the Defendants' actions and omissions, the Plaintiff suffered severe and permanent injuries.

WHEREFORE, the Plaintiff requests damages against the Defendants, jointly and severally, including an award of attorneys' fees and costs, and such other relief as this Honorable Court deems appropriate.

## COUNT II

**Plaintiff v. Defendants York County, Nan Mavor, in her Individual and Official Capacity, Cathy Lyman, in her Individual and Official Capacity, Defendant Jacy Niemiec (aka Jacy Colin), in her Individual and Official Capacity, and Defendant Ashley Rohrbaugh, in her Individual and Official Capacity**

**Special Relationship - 42 U.S.C. § 1983**

118. The allegations throughout this Complaint are incorporated as if set forth at length.

119. Under the Fourteenth Amendment, B.S. had a right to bodily integrity, which was violated by Witmer's sexual abuse.

120. When the Defendants placed B.S. with Ronald Witmer and took legal custody of B.S., the Defendants entered a special relationship with B.S.

121. The Defendants' special relationship with B.S. dictated the Defendants protect B.S. from foreseeable harm.

122. After such special relationship with B.S. existed, the Defendants' conduct shocked the conscience and/or was deliberately indifferent to the health and safety of B.S.

123. The Defendants' special relationship with B.S. imposed on the Defendant affirmative duties to prevent harm to B.S.

124. The Defendants violated their affirmative duties of protection as follows:

    a.    failing to investigate Witmer's background;

    b.    ignoring and/or disregarding Witmer's known history of sexually molesting children;

    c.    failing to supervise Witmer's relationship with B.S.;

    d.    covering for Witmer's known sexual history;

    e.    failing to disclose the details of Witmer's criminal history to the York County court;

    f.    failing to ensure B.S. was supervised in the Witmer home;

 g. maintaining official policies, customs, or practices that were indifferent to the risk of sexual victimization to children in County custody;

 h. failing to appropriately train and/or supervise employees; and

 i. taking affirmative actions that placed B.S. at a risk of harm.

125. As a direct and proximate result of the Defendants' actions and omissions, the Plaintiff suffered severe and permanent injuries.

WHEREFORE, the Plaintiff requests damages against the Defendants, jointly and severally, including an award of attorneys' fees and costs, and such other relief as this Honorable Court deems appropriate.

## COUNT III

### Plaintiff v. Defendant York County

### *Monell*/Municipal Custom - 42 U.S.C. § 1983

126. As a direct and proximate result of the Defendants' actions and omissions, the Plaintiff suffered severe and permanent injuries.

127. York County engaged in the following practices that were, at all times relevant, so widespread that they constituted a standard operating procedure of the County:

 a. Engaging in the routine practice of circumventing Pennsylvania's Child Protective Services Law, which explicitly precludes individuals with certain criminal histories from serving as foster parents;

  b. Engaging in the routine practice of completing Present Danger Assessments without the benefit of criminal records.

128. York County's municipal customs were the moving force behind the violation of B.S.'s rights, as described herein.

WHEREFORE, the Plaintiff requests damages against the Defendants, jointly and severally, including an award of attorneys' fees and costs, and such other relief as this Honorable Court deems appropriate.

           Respectfully Submitted,

           **ANDREOZZI & ASSOCIATES, P.C.**

Dated: DRAFT       */s/ Benjamin D. Andreozzi*
           Benjamin D. Andreozzi, Esq. (ID #89271)
           ben@victimscivilattorneys.com

           */s/ Nathaniel L. Foote*
           Nathaniel L. Foote, Esq. (PA #318998)
           nate@victimscivilattorneys.com

           111 North Front Street
           Harrisburg, PA 17101
           Ph: 717.525.9124 | Fax: 717.525.9143
           *Attorneys for Plaintiff*